FILED by \_\_MM\_\_ D.C.

Jul 21, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**22-20326-CR-MOORE/LOUIS**

CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

vs.

**ANDRE LORQUET,**

    Defendant.

_____/

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

**Payroll Protection Program**

1.    Congress passed and the President signed the Coronavirus Aid, Relief, and Economic Security ("CARES Act") Act in March 2020 to provide financial assistance to Americans suffering economic harm from the COVID-19 pandemic. One source of relief provided through the CARES Act was the authorization of forgivable loans to businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

2.    To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the

program rules and make certain affirmative certifications. In the PPP loan application (Small Business Administration ("SBA") Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; (b) net profit; and/or (c) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

3. The CARES Act required PPP loan applications to be processed by a participating lender. If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA to process the loan.

### Economic Injury Disaster Relief Program

4. The Economic Injury Disaster Loan ("EIDL") is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. One source of relief provided by the CARES Act was the authorization for the SBA to provide EIDL loans of up to $2 million to eligible businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

5. To obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and gross revenues and costs of goods sold for the 12-month period preceding the

disaster. In the case of EIDLs for COVID-19 relief, the disaster was considered to have occurred on January 31, 2020. The applicant was further required to certify that it was not engaged in any illegal activity and that all of the information in the application was true and correct to the best of the applicant's knowledge.

6. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application was approved, was determined based in part on the information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under EIDL or an advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments.

## Shuttered Venue Operator Grant

7. The Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act ("Economic Aid Act") was a federal law enacted in December 2020 to provide emergency assistance to companies affected by COVID-19. One source of relief provided by the Economic Aid Act was the Shuttered Venue Operators Grant ("SVOG"), which included over $16 billion in grants to performing acts businesses.

8. SVOG's purpose was to support the ongoing operations of eligible live venues and operators, and associated companies like promoters and talent representatives, due to the disruptions caused by the COVID-19 pandemic. Eligible applicants could qualify for grants equivalent to 45% of their gross earned revenue, with the maximum amount of $10 million available for a single grant.

9. To obtain an SVOG award, a qualifying applicant was required to submit an application to the SBA and provide information about its operations, including contractual agreements with talent, venues used, evidence of booking, and tax returns. The applicant was further required to certify that the uncertainty of the then-current economic conditions made the grant necessary to support the business' ongoing operations.

10. Applications for SVOG grants were submitted directly to the SBA's Office of Disaster Assistance. The eligibility for a grant was determined in part based on the information provided in the application about the applicant's assets, contracts, and other business activity. The amount of the grant, if the application was approved, was determined based in part on the information provided by the application about gross revenue, dates of operation, and the amount of funds already received in disaster compensation. Any funds issued under SVOG were issued directly by the SBA. SVOG funds could be used for specific, enumerated expenses such as payroll costs, rent and utility payments.

**The Defendant and Related Entities and Individuals**

11. Miami Ent, LLC ("MEL") was a limited liability company organized under the laws of the State of Florida. Its principal place of business was in Miami, Florida.

12. Defendant, **ANDRE LORQUET**, a resident of Miami-Dade County, Florida, was the chief executive officer of MEL.

13. BlueVine was a financial-technology company based in Redwood City, California. BlueVine participated in the PPP by acting as a loan processor. Small businesses seeking a PPP loan could apply through BlueVine, which would review the PPP loan applications. If a PPP loan application received was approved for funding, a partner financial institution disbursed the loan funds to the applicant.

14. American Lending Centre was a private, non-bank lending institution headquartered in Irvine, California. American Lending Centre was a participating lender in the PPP program.

## COUNTS 1–4
### Wire Fraud
### (18 U.S.C. §1343)

1. Paragraphs 1 through 14 of the General Allegations Section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around June 2020, through in or around November 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRE LORQUET,**

did knowingly, and with intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for the defendant, **ANDRE LORQUET,** to unjustly enrich himself by submitting or causing others to submit, false and fraudulent PPP, EIDL, and SVOG applications on behalf of MEL, seeking approximately $4.7 million in COVID-relief funds, and then using the subsequent loan proceeds for his personal use and benefit.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

The manner and means by which the defendant, **ANDRE LORQUET**, sought to accomplish the scheme and artifice to defraud included, among others, the following:

4. **ANDRE LORQUET** submitted or caused the submission of PPP loan applications to BlueVine and American Lending Centre for the benefit of MEL, seeking PPP loans in the approximate amount of $431,291.

5. In each PPP loan application, **ANDRE LORQUET** falsely and fraudulently inflated MEL' prior-year expenses, net profit, and payroll. In support, **LORQUET** submitted false and fraudulent IRS forms, which purported to report MEL's expenses, net profit, and payroll.

6. As a result of the false and fraudulent PPP loan applications that **ANDRE LORQUET** submitted and caused to be submitted, **LORQUET** received PPP loan funds in the approximate amount of $431,291

7. **ANDRE LORQUET** submitted or caused the submission of, to the SBA, one EIDL and EIDL advance loan application for the benefit of MEL, seeking an EIDL loan in the approximate amount of $509,450.

8. In the EIDL application, **ANDRE LORQUET** falsely and fraudulently misrepresented MEL's prior year gross revenues and costs of goods sold, as well as the current year's number of employees.

9. As a result of the false and fraudulent PPP loan applications that **ANDRE LORQUET** submitted and caused to be submitted, **LORQUET** received EIDL loan funds in the approximate amount of $124,800.

10. **ANDRE LORQUET** submitted or caused the submission of, to the SBA, one SVOG application for the benefit of MEL, seeking an SVOG award in the approximate amount of $2,716,901. **LORQUET** also submitted or caused to be submitted to the SBA one supplemental

-6-

SVOG application, seeking a supplemental SVOG award in the approximate amount of $1,358,451.

11. In support of MEL's SVOG application, **ANDRE LORQUET** submitted a false and fraudulent letter, pretending to be a certified tax preparer, and included a false and fraudulent IRS form, which purported to report MEL's gross receipts and other income for tax year 2019.

12. As a result of the false and fraudulent SVOG application that **ANDRE LORQUET** submitted and caused to be submitted, **LORQUET** received SVOG funds in the approximate amount of $ 3,859,711.

13. **ANDRE LORQUET** obtained approximately $4.4 million in COVID-relief funds as a result of his false and fraudulent applications, and used the fraudulently obtained funds for his own personal use and benefit and the use of benefit of others.

## USE OF THE WIRES

14. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRE LORQUET,**

for the purpose of executing, and in furtherance of, the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false or fraudulent when made, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more specifically described below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 1 | June 3, 2020 | The submission of an electronic PPP loan application on behalf of MEL to BlueVine, causing a wire transmission from the Southern District of Florida to outside the State of Florida |

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 2 | June 17, 2020 | The submission of an electronic EIDL application on behalf MEL to the SBA, causing a wire transmission from the Southern District of Florida to outside the State of Florida |
| 3 | March 18, 2021 | The submission of an electronic PPP loan application on behalf of MEL to American Lending Centre, causing a wire transmission from the Southern District of Florida to outside the State of Florida |
| 4 | August 18, 2021 | The submission of an electronic SVOG application on behalf MEL to the SBA, causing a wire transmission from the Southern District of Florida to outside the State of Florida |

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNTS 5–8
## Money Laundering
## (18 U.S.C. § 1957)

1. Paragraphs 1 through 14 of the General Allegations Section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each Count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRE LORQUET**,

did knowingly engage in, and attempt to engage in, a monetary transaction affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as more specifically described below:

| COUNT | APPROX. DATE | DESCRIPTION OF TRANSACTION |
|---|---|---|
| 5 | June 10, 2020 | ACH debit, in the approximate amount of $93,439, from **MEL**'s account ending in 2431 at TD Bank, for the purchase of a Tesla Model S |
| 6 | June 24, 2020 | Wire transfer, in the approximate amount of $29,000 from **MEL**'s account ending in 2431 at TD Bank, for the purchase of a Porsche Panamera GTS |

| COUNT | APPROX. DATE | DESCRIPTION OF TRANSACTION |
|---|---|---|
| 7 | December 1, 2021 | Wire transfer, in the approximate amount of $329,195, from **LORQUET's** account ending in 3570 at TD Bank, for a deposit on a Lamborghini Urus |
| 8 | December 6, 2021 | ACH debit, in the approximate amount of $158,653, from **MEL's** account ending in 2431 at TD Bank, for the purchase of a Tesla Plaid |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1957.

## COUNT 9
## Aggravated Identity Theft
## (18 U.S.C. § 1028A(a)(1))

On or about November 12, 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ANDRE LORQUET,**

during and in relation to a felony violation of Title 18, United States Code, Section 1343, that is, wire fraud, as charged in Count 4 of this Indictment, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, the name, address, telephone number, and electronic filing identification number of "C.D.," in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ANDRE LORQUET**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or

personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of a violation, or a conspiracy to commit a violation, of Title 18, United States Code, Sections 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation pursuant to Title 18, United States Code, Section 982(a)(2)(A).

4. Upon conviction of a violation of Title 18, United States Code, Section 1957, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, Section 982(a)(1). The property subject to forfeiture as a result of this alleged offense includes but is not limited to, the following:

(i) One (1) 2020 Tesla Model S, VIN# 5YJSA1E28LF399767;

(ii) One (1) 2019 Porsche Panamera GTS, VIN# WP0AG2A77KL139387;

(iii) One (1) 2022 Lamborghini Urus, VIN# ZPBUA1ZL1NLA16143; and

(iv) One (1) 2022 Tesla Plaid, VIN# 5YJSA1E66NF460071.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and 982(a)(1), and 982(a)(2)(A), and the procedures set forth at Title 21, United States Code, Section 853 as incorporated by Title 28, United States Code, Sections 2461(c) and 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
JONATHAN BAILYN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ANDRE LORQUET,

_____/
Defendant.

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No)
Number of New Defendants
Total number of New Counts

**Court Division** (select one)
- ☑ Miami
- ☐ Key West
- ☐ FTP
- ☐ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect:

4. This case will take  8  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☐ 0 to 5 days
   - II  ☑ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge                    Case No.

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No.

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge                    Case No.

9. Defendant(s) in federal custody as of
10. Defendant(s) in state custody as of
11. Rule 20 from the                  District of
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
Jonathan Bailyn
Assistant United States Attorney
Court ID No.    A5502602

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Andre Lorquet

**Case No:** _____

Counts #: 1–4

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** 20 Years' Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 Years
* **Max. Fine:** $250,000

Count #: 5–8

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 Years' Imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 Years
* **Max. Fine:** $250,000

Count #: 9

Aggravated Identity Theft

Title 18, United States Code, Section 1028A(a)(1)
* **Max. Term of Imprisonment:** 2 Years' Imprisonment Consecutive to Any Other Sentence
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:** 3 Years
* **Max. Fine:** $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.