```
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA

                        CASE NO. 22-CR-20326-KMM-1

UNITED STATES OF AMERICA,
                                          Miami, Florida
              Plaintiff(s),
                                          November 8, 2022
         vs.

ANDRE LORQUET,

              Defendant(s).     Pages 1 - 16
-----------------------------------------------------------

                        INITIAL APPEARANCE
         TRANSCRIBED FROM DIGITAL AUDIO RECORDING
         BEFORE THE HONORABLE JACQUELINE BECERRA
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):   ELIZABETH YOUNG, ESQ.
                        UNITED STATES ATTORNEY'S OFFICE
                        99 NE 4th Street
                        Miami, FL 33132
                        305-961-9001
                        elizabeth.young@usdoj.gov


FOR THE DEFENDANT(S):   DANIEL ECARIUS, ESQ.
                        OFFICE OF FEDERAL PUBLIC DEFENDER
                        150 West Flagler Street
                        Miami, Florida 33130
                        305-536-6900
                        daniel_ecarius@fd.org


TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                        Court Reporter
                        jemancari@gmail.com
```

1   Thereupon,

2   the following proceedings were held:

3         THE COURT: We have got one case on the calendar
4   today. There is an order unsealing the indictment. I have
5   signed that. The case is United States v. Andrè Lorquet, 22
6   Cr. 20326, Moore.

7         Will counsel state their appearances, please.

8         MS. YOUNG: Elizabeth Young on behalf of the United
9   States, standing in for Jonathan Bailyn.

10         THE COURT: All right. Good afternoon, sir.

11         THE DEFENDANT: Good afternoon, ma'am.

12         THE COURT: So let me tell you what you are here for
13   today and what is going to happen in today's hearing. OK.

14         THE DEFENDANT: Yes, ma'am.

15         THE COURT: As you can see, you are the only person
16   doing an initial appearance today. That is pretty rare.
17   Usually we have got a half a dozen or more people here waiting
18   for an initial appearance.

19         You are before the court because the United States has
20   filed criminal charges against you. You have been indicted by
21   a grand jury here in the Southern District of Florida. So when
22   that happens and you are placed under arrest, you are entitled
23   to this hearing. It is called your initial appearance.

24         At this hearing I am going to advise you of what your
25   rights are, I am going to tell you what the charge against you

1  is, what the maximum penalty for that charge is, and we are
2  going to figure out -- I don't know that we are giving you a
3  bond today.  I am going to ask the government what bond they
4  recommend and, depending on what bond they recommend, you may
5  or may not get a bond today.  They may recommend that you get
6  no bond.  If they recommend that you get no bond, we might have
7  to have a bond hearing today or we might have to get a
8  continuance of that because they are entitled to time to
9  prepare.  OK.
10         So, first of all, you are entitled to a lawyer.  All
11 right.  Your criminal case cannot proceed without a lawyer
12 because you have a right to counsel.  When you can't afford a
13 lawyer, I can appoint one for you.  All right.  In order for me
14 to appoint a lawyer for you, though, I have to find that you
15 can't afford a lawyer yourself.  If I find that you can't
16 afford a lawyer yourself, then I will appoint one for you.
17         If you can afford a lawyer, then I will give you time
18 to find that lawyer.  All right.
19         You have a right to remain silent.  Anything you say
20 can be held against you.  If you have already spoken to law
21 enforcement, you are under no obligation to continue making
22 statements.  If you decide later to speak to law enforcement,
23 you can do that, but you can also stop at any time.  You also
24 have a right to have a lawyer present.
25         Before I go on to tell you what the charges are and go

1   on to discuss the bond, let me ask you about the situation with
2   a lawyer.  Can you afford a lawyer, sir?
3           THE DEFENDANT:  No, ma'am.
4           THE COURT:  All right.  I am looking at your Pretrial
5   Services report.  Your Pretrial Services report, at least you
6   told Pretrial Services that you have a number of assets,
7   including two Teslas, a motorcycle, a Lamborghini, and a jet
8   ski.
9           THE DEFENDANT:  Yes, ma'am.
10          THE COURT:  So are those things that you own, you
11  lease?  I need to to know what assets you have in the world.
12          THE DEFENDANT:  I own, ma'am.  My business owns it.
13          THE COURT:  All right.  Who owns your business?
14          THE DEFENDANT:  Me, ma'am.
15          THE COURT:  Then you own it.  If you own the business
16  and these are assets that you have -- I mean, do you have
17  business partners or are you the only person in your business?
18          THE DEFENDANT:  The only person, ma'am.
19          THE COURT:  All right.  So this is the issue.  In
20  order for me -- by the way, you have two Rolex watches, right.
21          In order for me to appoint counsel for you that is
22  paid by the citizens of this community, I have to find that you
23  can't afford a lawyer.
24          I am looking here that you told Pretrial Services that
25  you have assets in excess of $300,000.

```
 1              THE DEFENDANT:  They're not 300, but yes, ma'am.
 2              THE COURT:  Well, you told them you have a Tesla that
 3    is 70,000, another Tesla that is 70,000, a Lamborghini worth
 4    100,000.
 5              Is that a fair assessment of what those are worth?
 6              THE DEFENDANT:  Yes, ma'am.
 7              THE COURT:  All right.  So how is it that you wouldn't
 8    be able to afford a lawyer?
 9              THE DEFENDANT:  Those are for business use.  I don't
10    have any money, ma'am.
11              THE COURT:  I know, but you could sell things.  I
12    think the issue is that you have got a $70,000 Tesla, you might
13    want to sell it and get yourself a lawyer.  That is how the law
14    works.
15              THE DEFENDANT:  True, but you guys impounded one.
16              THE COURT:  Well, let me hear from the government.  Do
17    you know what the state of his assets are?
18              MS. YOUNG:  Your Honor, I am not aware -- this is a
19    PPP loan fraud case where he fraudulently got about a $3.5
20    million PPP loan.  That money, as is often the case, was simply
21    withdrawn and the government doesn't really know where that
22    money is at this point, unfortunately.  So I do think it sort
23    of shows that he does have potentially access to quite a large
24    sum of money depending on what he did with that PPP funds that
25    we cannot see from the bank accounts.
```

1          THE COURT:  What is going to be the government's
2     position on a bond?
3          MS. YOUNG:  Your Honor, I think that we could -- we
4     have a basis for detention based on a risk of flight.  Among
5     other things, unaccounted for is money.  He has some foreign
6     ties, some foreign travel.  It is problematic he doesn't have
7     an address on record with David.  Even his own mother doesn't
8     know his address.
9          So I think we have a basis to move for detention based
10    on risk of flight; however, I would like to try to work out a
11    bond.  I began to try to talk to the Public Defender about it,
12    if he is appointed, and I'm not sure based on the asset issue
13    that he will be.  We certainly could attempt to fashion a bond
14    here.
15         THE COURT:  What I would be inclined to do, and let me
16    hear from the Public Defender's Office on this because I
17    haven't had occasion to do this before, I don't mind appointing
18    the Public Defender for the limited purpose of helping him work
19    out a bond and then set it for a report re counsel in a week or
20    two.
21         I am looking at someone who has assets in the hundreds
22    of thousands of dollars and who committed a $3 million fraud,
23    according to the government.  I'm not sure he qualifies for the
24    appointment of counsel.
25         With that said, if he can work out a bond, I don't

1    want him to sit in jail while a lawyer helps him do that.
2            Can the PD accept the limited appointment just for
3    purposes of a bond?
4            MR. ECARIUS: We can accept it. I think we can. We
5    will have to take it as a regular appointment, but with the
6    idea that if he hires someone that appointment would end.
7            THE COURT: OK. This is what I will do then. I am
8    going to appoint the Public Defender's Service to represent you
9    today.
10           THE DEFENDANT: Thank you.
11           THE COURT: I am going to give the United States
12   Attorney's Office a week, right --
13           MS. YOUNG: OK.
14           THE COURT: -- to make a motion.
15           MS. YOUNG: Sure.
16           THE COURT: That gives you some time for Mr. Bailyn to
17   look at the file. The government can always make the motion
18   that you don't qualify for the appointment of counsel because
19   of the asset issue, and if they do, then that can be heard by
20   the judge at that point.
21           This is the issue. People who get lawyers here are
22   people who can't afford them. I'm looking at your assets. You
23   can afford a lawyer.
24           THE DEFENDANT: All right, ma'am.
25           THE COURT: I'm telling you, you have a $70,000 Tesla,

```
 1    you are going to need to sell it is what is going to have to
 2    happen here.
 3              THE DEFENDANT:  Ma'am --
 4              THE COURT:  Now if the government impounded your
 5    stuff, then that is a different situation.
 6              THE DEFENDANT:  They did.
 7              THE COURT:  I don't exactly know right now what
 8    they've impounded.  We are here at the initial appearance.  The
 9    government isn't quite sure what you have access to or not.  I
10    am going to give them a week to work it out.  Maybe they don't
11    file any motion.  Maybe they figure out, you know what, this
12    money's already gone, he doesn't have any money.  But if they
13    think that you've got money for a lawyer, they will file a
14    motion that says that the appointment of counsel was
15    improper --
16              THE DEFENDANT:  And I can prove where the money went.
17              THE COURT:  -- and I'm giving them a week -- well, you
18    don't want to say anything else because anything you say can be
19    used against you.  So don't say a word.  This is why I gave you
20    a lawyer.
21              THE DEFENDANT:  Yes, ma'am.
22              THE COURT:  Because I don't want you to be working out
23    the bond without a lawyer.
24              All right.  So the charge against you, sir -- and
25    again, as I mentioned, you were indicted by a grand jury.  You
```

1   were indicted in connection with a fraud on PPE loans.

2             You are charged in Counts One, Two, Three, and Four
3   with wire fraud. It is a 20-year term of imprisonment for each
4   of those counts.

5             Counts Five, Six, Seven, and Eight charge you with
6   money laundering. It is ten-year imprisonment each count.

7             Count Nine is aggravated identity theft. That is a
8   two-year term mandatory. Like it is just two years, you can't
9   get any more, any less, and that runs consecutive to any other
10  sentence. So if you were found guilty of any of these other
11  counts and, let's say, got five years from the judge, you would
12  have to do two more for the aggravated identity theft.

13            Do you understand that is the charge and the maximum
14  penalty against you?

15            THE DEFENDANT: Yes, ma'am.

16            THE COURT: OK. Let me hear what the government's
17  position on bond is.

18            MS. YOUNG: Your Honor, I was going to ask until
19  Thursday to set this for a detention hearing to give us a
20  moment to discuss a potential bond here. I don't know if that
21  would work with Public Defender. I am also happy if we have a
22  few moments, if you could indulge us, just to quickly have a
23  conversation about a possible bond.

24            THE COURT: Why don't you take the time now.
25  Obviously nobody is waiting, so go ahead.

```
 1                MS. YOUNG:  Thank you, your Honor.
 2                MR. ECARIUS:  Thank you.
 3                (Recess)
 4                THE COURT:  All right.  Do we have an agreement on the
 5    bond?
 6                MS. YOUNG:  We do, your Honor.
 7                THE COURT:  OK.  What is it?
 8                MS. YOUNG:  OK, Judge.  What we came to an agreement
 9    on was a $250,000 personal surety bond that would be cosigned
10    by the defendant's mother.  Her name is Vivian, V-I-V-I-A-N,
11    Lorquet, L-O-R-Q-U-E-T.  It would also be backed by her home
12    that has about $300,000 in equity.
13                Do you have the address for her home?
14                (Pause)
15                MS. YOUNG:  So, Judge, the address of his mother's
16    home is 7849 Whispering Palms Drive, No. 202.  That's Boynton
17    Beach 33437.
18                We would also have a $20,000 10 percent bond with
19    Nebbia conditions.  In addition, the standard conditions of
20    surrendering passports, not obtaining new travel documents,
21    report to Pretrial Services as directed, maintain or seek
22    full-time employment, no contact with victims except through
23    counsel, no firearms.
24                She is not to encumber her property.
25                He may not visit transportation establishments, and we
```

1    would also ask for a no new debt restrictions so that he
2    doesn't take out any other debt or loans.
3             THE COURT:  Did you say there was an employment
4    restriction?  No, right?
5             MS. YOUNG:  No, we don't have an employment
6    restriction.
7             THE COURT:  What is going to happen with the 10
8    percent?  Is he going to be able to pay the 10 percent today.
9             MRS. LORQUET:  Yes, your Honor, I'll pay.
10            MR. ECARIUS:  Yes, your Honor.  His mother says so.
11            THE COURT:  Is the government going to accept that
12   Nebbia?  Because it's got a Nebbia.
13            MS. YOUNG:  Yes.  I think based on the representations
14   it had nothing to do with the PPP loan fraud, so that Nebbia
15   would be met.  It is from her money.
16            THE COURT:  All right.  So that has to be paid in the
17   court registry today.  He can't be released until that's paid,
18   right.  So does she have time to go pay it?
19            THE DEPUTY CLERK:  Yes.  They close at 4:30.
20            THE COURT:  All right.
21            MR. ECARIUS:  Yes, Judge.
22            THE COURT:  So it will be a $250,000 personal surety
23   bond signed by the defendant and his mother.  The personal
24   surety bond will be collateralized by the home at 7849
25   Whispering Palms Drive in Boynton Beach -- that is his mother's

1    home -- No. 202.
2             There will be a $20,000 10 percent bond with a Nebbia.
3    The government has represented that the Nebbia will be met
4    because it will be the mother putting the money in the court
5    registry today.
6             You are to surrender all passports and travel
7    documents to Pretrial Services.  You are to report to Pretrial
8    Services as they direct you.  You are to maintain and seek
9    full-time employment.  You are to avoid contact with any
10   victims or witnesses of the crime.  If it has to do with your
11   preparation for trial, of course your lawyer will take care of
12   that.
13            You must refrain from possessing a firearm.  Pretrial
14   Services notes that you have a concealed weapons permit.  You
15   must surrender the permit and surrender your weapon to Pretrial
16   Services.
17            None of the signatories, that means your mom, you
18   can't take out a mortgage, you can't encumber your property in
19   any way during the time of the bond.
20            You cannot visit any commercial travel establishments.
21   You can't go to the airport, you can't go to the port, you
22   can't go to the train station.  Nothing.  All right.  You are
23   prohibited from going to any commercial transportation
24   establishment.
25            You are not to seek any debt yourself, sir.  So you

1  can't get a new debt without permission or any additional debt
2  without permission of the court.
3      The United States Attorney's Office will have a week
4  to file a motion with the court asking for the court to
5  reconsider its appointment of counsel.  It is either going to
6  go to me or Judge Louis, right, because it is a Judge Moore
7  case.  I will set the bond so you would think it will come to
8  me, but if it doesn't come to me, I suspect that Judge Moore
9  would then send it to his paired magistrate, which in this case
10 is Judge Louis.
11     If the government doesn't file anything, then I will
12 assume, then, that the appointment of counsel is proper.
13     I still have to read the government the Brady
14 admonition.  So let me do that.
15     As required by Rule 5(f) of the Rules of Criminal
16 Procedure, the United States is ordered to disclose to the
17 defendant all exculpatory evidence, that is, evidence that
18 favors the defendant or casts doubt on the United States case,
19 as required by Brady v. Maryland and its progeny.
20     The government has a duty to disclose any evidence
21 that goes to negating the defendant's guilt, the credibility of
22 a witness, or that would reduce a potential sentence.  The
23 defendant is entitled to this information without a request.
24 Not doing so in a timely manner may result in consequences,
25 including, but not limited to, the exclusion of evidence,

1     adverse jury instructions, dismissal of charges, contempt
2     proceedings, disciplinary action, or sanctions by the court.
3          I think what I will do is I will reset the date for
4     arraignment.  I typically would have the arraignment today, but
5     I think we will reset it --
6          MR. ECARIUS:  Judge, we are ready for arraignment
7     today.  I am going to be able to meet with him after.
8          THE COURT:  Right.  The problem is if I arraign him
9     today and the government files a motion next week that says the
10    appointment from the Public Defender's Office is improper given
11    his wealth, he won't be any better off, right.
12         So I think what I will do is if they have a week, they
13    will have until next Tuesday, what I will do is I will set the
14    arraignment for next Thursday or next Friday, whatever date is
15    better for you, sir.
16         MR. ECARIUS:  Thursday should be good.
17         THE COURT:  So why don't I set it for Thursday.  If
18    the government hasn't filed anything, then you are clear for
19    the arraignment.  If it does, then you can either reset the
20    arraignment or have the hearing before me or before Judge Louis
21    before Thursday on the issue of the bond.
22         MS. YOUNG:  Great.  Thank you, Judge.
23         THE COURT:  I'm sorry.  Not on the bond, on the issue
24    of the appointment of counsel.
25         Donna, set it for arraignment next Thursday.

```
 1              THE DEPUTY CLERK:  Judge, what about the Nebbia
 2   stipulation?  Are you filling that out as well, Mr. Ecarius?
 3              THE COURT:  The assistant United States attorney has
 4   represented on the record that there is no issue with the
 5   Nebbia.
 6              MS. YOUNG:  OK.
 7              THE COURT:  So I don't think we should have an issue
 8   with the Nebbia then.
 9              THE DEPUTY CLERK:  I'm not sure if financial will
10   take -- I think they need to see the Nebbia, but let me verify
11   that, the Nebbia form.
12              THE COURT:  Right.  You may have to sign the Nebbia
13   form or if you want to withdraw the Nebbia restriction given
14   the representation that it is going to be his mother who is
15   going to depose it the money, whatever your preference is.
16              MS. YOUNG:  That sounds more efficient.  We will just
17   withdraw the Nebbia restriction because I just don't see it
18   being a problem here.
19              THE COURT:  They are going to withdraw it.
20              THE DEPUTY CLERK:  Never mind.
21              MS. YOUNG:  Thank you, Judge.
22              THE COURT:  All right.  You will withdraw and that
23   will be easier for her to get to the clerk's office and get it
24   done before the end of the day.
25              MS. YOUNG:  No problem.
```

```
1           THE COURT:  All right.  Ms. Young, anything else on
2    behalf of the United States?
3           MS. YOUNG:  No.  Thanks, Judge.  Good to see you.
4           THE COURT:  Good to see you.
5        Mr. Ecarius, anything else on behalf of your client?
6           MR. ECARIUS:  Nothing, your Honor.  Thank you.
7        (Adjourned)
8
9                        C E R T I F I C A T E
10
11     I hereby certify that the foregoing is an accurate
12   transcription to the best of my ability of the digital audio
13   recording in the above-entitled matter.
14
15   December 19, 2022      s/ Joanne Mancari
                            Joanne Mancari, RPR, CRR, CSR
16                          Court Reporter
                            jemancari@gmail.com
17
18
19
20
21
22
23
24
25
```