UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-CR-20326-MOORE

UNITED STATES OF AMERICA

v.

ANDRE LORQUET,

    Defendant.
    _____/

## NOTICE TO INTRODUCE EVIDENCE UNDER
## FEDERAL RULE OF EVIDENCE 404(B)

The United States of America (the "Government"), through the undersigned Assistant United States Attorney, hereby files this Notice to Introduce Evidence Under Federal Rule of Evidence 404(b).

## INTRODUCTION

The Defendant Andre Lorquet is charged with participating in a scheme in or around June 2020 through in or around November 2021 to submit or cause others to submit fraudulent COVID-relief loan applications for his company, Miami Ent LLC ("MEL"). MEL applied for and received Paycheck Protection Program ("PPP") loans, an Economic Injury Disaster Loan ("EIDL"), and a Shuttered Venue Operator Grant ("SVOG"). In a post-*Miranda* interview, the Defendant admitted that he applied for the EIDL loan but said that someone else applied for the PPP loans and SVOG grant. The only loan he "knew how to do" was the EIDL, the Defendant said, and he "didn't know how to do anything" regarding COVID-relief.

The Defendant's denials during his post-*Miranda* interview place his knowledge, intent, and identity at issue in this trial. The Government therefore seeks to introduce evidence that shows

that the Defendant knew exactly what he was doing, that it was the Defendant doing it, and that the Defendant intended to commit COVID-relief fraud. This evidence includes fraudulent loan applications that the Defendant filed for third parties and communications between the Defendant and third parties in which he solicits them as clients and writes that he knows how to apply for PPP and SBA loans. This evidence is admissible as intrinsic evidence, and outside Rule 404(b), because it is inextricably intertwined with the Defendant's scheme and integral to an account of his crime. In the alternative, the evidence is admissible "other acts" evidence because it is probative of the Defendant's intent, knowledge, and identity.

## BACKGROUND

In 2020 and 2021, the Defendant participated in a scheme to file COVID-relief applications that greatly overstated MEL's payroll and revenue. In each application, the Defendant fabricated numbers and submitted fraudulent documents. Among other things, the Defendant submitted fraudulent IRS Form 940s, which are annual filings with the IRS that report an employer's federal unemployment tax. To submit two of his applications, the Defendant created sham e-mail addresses.

Counts 1 and 3 of the indictment allege interstate wires related to the Defendant's PPP applications. During the COVID-19 epidemic, PPP provided forgivable loans to small businesses to help them keep up with their expenses and maintain their payroll. Under PPP, participating lenders funded the loans and the SBA guaranteed them. The indictment alleges that the Defendant applied for PPP loans with two participating lenders in June 2020 and March 2021.

Count 2 of the indictment alleges an interstate wire related to the Defendant's EIDL application. EIDL is an SBA program that lends money to businesses affected by COVID-19 and

other disasters. The indictment alleges that the Defendant applied for an EIDL loan with the SBA in June 2020.

Count 4 of the indictment alleges a wire related to the Defendant's SVOG grant. Through SVOG the SBA awarded grants to entertainment venues and companies that could not fully function during the pandemic. The indictment alleges that the Defendant applied for an SVOG award with the SBA in August 2021. In the SVOG application, the Defendant used the identity of a certified tax preparer and submitted a fake confirmation with her identifying information. The indictment charges that submission as aggravated identity theft in Count 9.

The Defendant's scheme was successful and he received approximately $4.4 million in COVID-relief funds. The defendant laundered the proceeds of his COVID-relief fraud by withdrawing large amounts of cash, writing high-value checks, and purchasing expensive jewelry. The Defendant also laundered his proceeds by purchasing five cars: one Porsche, one Lamborghini, and three Teslas. The indictment charges four of these car purchases as money laundering in Counts 5 through 8.

## EVIDENCE TO BE INTRODUCED

The wire fraud scheme the Defendant participated in involved more COVID-relief applications than those charged in the indictment. The Defendant's e-mail inbox shows that he and his accomplices filed dozens of applications for third parties, the Defendant's cloud drive contains a document listing each of the applicants and their loans, and the Defendant's bank statements show that he received kickbacks from the successful applications. During its case-in-chief, the Government intends to introduce evidence related to two of the loan applications that the Defendant submitted for third parties, AJI Clark Bathtub Refinishing LLC ("Clark") and Daniela Rendon PA ("Rendon"). This evidence includes e-mails in which the Defendant sends

and receives application information for Clark and Rendon, Exs. 1 & 2, financial statements for Clark and Rendon from the Defendant's cloud drive, Exs. 3 & 5, the PPP applications for Clark and Rendon, Exs. 4 & 7, and the subscriber information and e-mails from danielarendonpa@gmail.com, which the Defendant created to submit the application for Rendon, Exs. 6 and 8.  The Government also intends to introduce the chart of PPP applications he and his accomplices submitted for third parties, Ex. 16.  In addition, the Government intends to introduce the Defendant's communications on Facebook and Instagram about filing COVID-relief applications, how much he charges for the service and where to send payment, and what documents the Defendant requested from third parties to process their loans.  Exs. 9–15.

## **LEGAL STANDARD**

The Court may introduce evidence of "any other crime, wrong, or act," that is, extrinsic evidence, for any purpose other than "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  To be admissible under Rule 404(b), "(1) [the evidence] must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403."  *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).  Permissible issues include "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

Rule 404(b) does not exclude evidence that is intrinsic to the charged offense.  Intrinsic evidence is "evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime."  *United States v. White*, 848 F. App'x 830, 840 (11th

Cir. 2021) (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)). Intrinsic evidence is admissible if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008) (cleaned up). Intrinsic evidence does not require pretrial notice but must satisfy Rule 403, that is, its "probative value" must not be "substantially outweighed by any unfair prejudice caused by that evidence." *United States v. Olaniyi*, 796 F. App'x 601, 606 (11th Cir. 2019) (citing Fed. R. Evid. 403).

## ARGUMENT

The evidence related to the third-party applications are intrinsic to the Defendant's charged offense because they are part of the same series of transactions as the alleged wire fraud. These applications were filed during the dates charged in the indictment and effectuated the same COVID-relief fraud, and therefore the evidence is "linked in time and circumstances" to the fraud and "forms an integral and natural part of an account of the crime." *United States v. McClean*, 138 F.3d 1398, 1403 (11th Cir. 1998). In the alternative, the evidence related to the third parties—both the applications and the communications—are extrinsic evidence under Rule 404(b) that prove the Defendant's intent, knowledge, and identity. The evidence shows that the Defendant himself submitted the applications alleged in the indictment, and the Defendant himself knowingly and intentionally participated in the scheme. Intrinsic or extrinsic, the third-party evidence is admissible.

**I.   INTRINSIC EVIDENCE: THE THIRD-PARTY APPLICATIONS AROSE FROM THE SAME SERIES OF TRANSACTIONS AS THE CHARGED WIRE FRAUD.**

The fraudulent loan applications that the Defendant filed for third parties, of which Clark and Rendon are but two, are inextricably intertwined with the Defendant's offense because they

were submitted through the same method as the Defendant's own fraudulent applications. The Eleventh Circuit "repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same modus operandi as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b)." *United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015).

To submit his own PPP applications, the Defendant included a fraudulent IRS Form 940 that falsely represented MEL paid $1,035,091 to its employees in tax year 2019 and represented that MEL owed $84 in federal unemployment taxes. The Defendant did not "flatten" this Form 940 that was in PDF format, and the document markups show that the date and signature were added on an iPad months after it was purportedly signed. The Form 940 that the Defendant submitted was an identical copy of another Form 940 that he had submitted on behalf of another applicant, This Is The Sound LLC, which was also a client listed on the Defendant's "PPP Clients" spreadsheet. The Defendant communicated with the owner of This Is The Sound LLC by e-mail, and the Defendant's cloud drive contained application documents for This Is The Sound LLC.

The Defendant repeated this pattern with the applications for Rendon and Clark, both of which were created from an IP address from which the Defendant repeatedly accessed his social media accounts. Like his own application, the Defendant created a fraudulently Form 940 for Clark and Rendon with fraudulent figures that he copied from another Form 940. In each Form 940, the Defendant reported that each company paid $955,152 to their employees in tax year 2019 and incorrectly calculated the total unemployment tax as $84, a unique number which cannot be arrived at if the representations in the loan applications are true. Like his own application, the Defendant also added the date and signature for Clark and Rendon on a mobile device, each time forgetting to remove the document markups. And like two of his applications, the Defendant

created a sham e-mail address for Rendon to send and receive communications with the PPP processor. Although the applications for Clark and Rendon are not charged, they share the same method and modus operandi as the scheme the Defendant is charged with, and are admissible as intrinsic evidence in the Eleventh Circuit.

In *Ford*, which involved a defendant who filed fraudulent tax returns in other people's names, the Eleventh Circuit held that uncharged tax returns were intrinsic to the charged offense where that evidence "concerned fraudulent tax returns that were filed by [the defendant], during the same time period, and using the same methods." 781 F.3d at 1394. One of those methods, like the Defendant's in this case, was the use of tax returns containing "false Schedule C information" and "common" false representations such as dependents or addresses. *Id.* Like *Ford*, the fraudulent applications that the Defendant submitted for third parties are not "other acts" under Rule 404(b). Rather, they are part of the same scheme he is charged with and use the same methods. Moreover, like the charged scheme, they are acts the Defendant committed to benefit himself: after Rendon and Clark's loans were approved, the Defendant received a $39,768 kickback from Rendon—20% of her loan amount—and a $29,849.85 kickback from Clark—15% of his loan amount.

The Eleventh Circuit has reaffirmed the reasoning of *Ford* in other cases like the Defendant's. In *United States v. Shabazz*, 887 F.3d 1204 (11th Cir. 2018), the defendant filed fraudulent tax returns for indigent inmates, claiming refunds for same tax period, using common addresses, and attaching forms that claimed similar expenses. The Government introduced uncharged tax returns that followed the same pattern as the charged offenses, and the Court of Appeals affirmed their admission as intrinsic evidence. *Id.* at 1217. The Court of Appeals found that the uncharged tax returns "were substantially similar to the charged returns," rejecting the

defendant's argument that the uncharged returns shared only "traits inherent in all inmate tax fraud schemes." *Id.* The same reasoning should apply here. The two uncharged applications that the Government seeks to admit were filed by the Defendant, contain the same incorrectly calculated taxable wages as his own, and were signed by the same method with the same neglect of the document markups. The time and circumstances are the same and, like *Ford* and *Shabazz,* all that differs is the name on the application.

## II. EXTRINSIC EVIDENCE: THE THIRD-PARTY APPLICATIONS AND COMMUNICATIONS PROVE THE DEFENDANT'S IDENTITY AND FRAUDULENT INTENT.

The third-party applications, as well as the Defendant's communications with third parties, are also admissible as extrinsic evidence because they are relevant to the Defendant's knowledge, intent, and identity. The Defendant has said that he did not know anything about COVID-relief loans or how to apply for them. The evidence the Government seeks to introduce shows that cannot be true and that, in fact, the Defendant attempted to capitalize on his own success by using the same methods for third parties. It is unlikely, the jury can infer, that the Defendant would solicit clients for something that the Defendant claims he knew nothing about.

"Text me I getting people approved for disaster small business loans PPP," the Defendant wrote to two people on Facebook, on June 19, 2020. The Defendant then requested the business information from the applicants, but did not ask for tax documents. He did not need to because, as is charged in the indictment, he could forge those himself. "I'm doing PPP loan for people and my Client's," the Defendant later wrote on March 2, 2021. Another person asked the Defendant if he could prepare Schedule Cs for PPP, and the Defendant said "Yes."

"Heyy are you doing PPP," someone wrote the Defendant on Instagram. "Yes," the Defendant wrote back. "Do one for me," she asked. "K," the Defendant replied. The Defendant

sent a screenshot of an approved PPP application and a link to the SBA website. "This is hitting I got the plug," the Defendant wrote.

The Government has a demanding burden: it must show the Defendant's knowledge and intent. The evidence it seeks to introduce is relevant to these issues, which the Defendant has inserted into this case by pleading not guilty and, in a post-*Miranda* statement, denying his knowledge and intent. *See, e.g.*, *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue.").

In addition to intent and knowledge, the third-party applications also prove the Defendant's identity because they bear his "signature," "handiwork," and "use[] a modus operandi that is uniquely his." *United States v. Vigne*, 571 F. App'x 932, 934 (11th Cir. 2014) (quoting *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010)). In *Vigne*, the defendant was accused of using a fake New York driver's license to redeem a money order at the U.S. Post Office. *Id.* When he was arrested, the defendant was carrying a stolen Bank of America debit card. *Id.* At trial, the Government introduced the defendant's ten-year-old prior conviction for using a stolen Bank of America debit card and a fake New York driver's license to buy a laptop. *Id.* The Court of Appeals affirmed the admission of the conviction because the "shared characteristics [were] sufficiently similar to be considered [the defendant's] signature or modus operandi." *Id.* "While the two crimes were not exactly the same," the Court of Appeals reasoned, "the manner in which they were carried out present the same unique characteristics—the use of a stolen Bank of America debit card in conjunction with a fake New York driver's license to fraudulently obtain something of value." *Vigne*, 571 F. App'x at, 934.

In this case, the Defendant's own applications and the applications for Clark and Rendon share far more characteristics than those in *Vigne*. In each application, the submitted Form 940 copied another Form 940, each Form 940 was filled in the same way, and each Form 940 was neglected to be flattened and therefore revealed the way it was made. Furthermore, the Defendant communicated with each of the third-party applicants through his e-mail, documents submitted with each application were found in the Defendant's drive, each of the applications were filed from an IP address the Defendant repeatedly accessed, and each application was filed in the same month. This is not a "commonplace variety of criminal act," *id.*, but is a signature, literally, of the Defendant's crimes. To show that the Defendant filed the fraudulent applications charged in the indictment, the Government should be permitted to show other instances in which the Defendant used the same modus operandi. The Defendant may deny it was him, but the evidence shows differently.

The three *Ellisor* factors for admitting Rule 404(b) evidence have been met. First, the evidence is relevant to identity, knowledge, and intent. Occurring during the charged offenses, the evidence is also highly probative. *See United States v. McNair*, 605 F.3d 1152, 1204 (11th Cir. 2010) ("[E]vidence of similar conduct that occurs during the same time period has heightened probative value.") (internal citations omitted). Second, the evidence cannot be controverted. The third-party applications that the Government seeks to introduce have been stored on computer-servers and produced as certified business records. The application documents come from the Defendant's own cloud drive, and the messages come from the Defendant's own social media. Third, any prejudice is not "undue." The third-party applications the Government seeks to introduce are a limited selection of vast wire fraud that the Defendant's own records show he participated in. And, the Defendant cannot be not unduly prejudiced by his own words, reprinted

directly from his social media. *See United States v. Harbison*, 523 F. App'x 569, 575 (11th Cir. 2013) (admitting an undisclosed statement over objection where, "[a]s for prejudice to the Defendant, the statement that purportedly came as a surprise to defense counsel was [the Defendant's] own statement" and, "[m]ore importantly, defense counsel had the opportunity to cross-examine [the witness] and ask in the jury's presence whether the 'y'll can't make nuthin' stick' statement could have been by someone who felt he was being wrongly accused"); *United States v. Williams*, No. 11-60285, 2013 WL 1748753, at *3 (S.D. Fla. Apr. 23, 2013) ("While it is true that the recording is prejudicial against [the defendant], that fact results in large part from [the defendant's] own statements and actions."). If there is a missing context to these messages, the Defendant can explain it. A meaning other than the obvious, he can explain that too. But excluding evidence because it is unduly prejudice under Rule 403 is "an extraordinary remedy which the district court should invoke sparingly." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011). The third-party applications, as well as the Defendant's communications with third parties are highly relevant and hardly prejudicial. It should be seen by the jury, who can follow a limiting instruction to reduce any prejudicial effect. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993); *see* Eleventh Circuit Pattern Jury Instructions, Special Instr. No. 4.1, Similar Acts Evidence (Rule 404(b), Fed. R. Evid.) (2020). They can then decide what to think.

## **CONCLUSION**

Accordingly, the United States of America (the "Government"), through the undersigned Assistant United States Attorney, hereby files this Notice to Introduce Under Federal Rule of Evidence 404(b).

        Respectfully submitted,

        JUAN ANTONIO GONZALEZ
        UNITED STATES ATTORNEY

BY:    Jonathan Bailyn
        Jonathan R. Bailyn, AUSA
        Court ID No. A5502602
        99 Northeast Fourth Street, 6th Floor
        Miami, Florida 33132-2111
        Phone: (305) 961-9071
        jonathan.bailyn@usdoj.gov