# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO: 22-CR-20326-MOORE

UNITED STATES,

v.

ANDRE LORQUET,

   Defendant.

_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S SECOND MOTION TO WITHDRAW PLEA

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files Opposition to the Defendant Andre Lorquet's Second Motion to Withdraw Guilty Plea (the "Motion" or "Motion to Withdraw") [ECF No. 85].

## INTRODUCTION

The Defendant entered a guilty plea, moved to withdraw it, moved to withdraw his motion to withdraw, and then moved to withdraw his plea again. The Defendant's privately-retained attorney withdrew from the case, and the Defendant's court-appointed counsel has moved to withdraw, too. Now, after wasting months of the Court's time and the Government's resources, the Defendant makes the same allegations that he made before: the Defendant thought he was going to a bond hearing, not a change of plea; or, alternatively, he did know he was pleading guilty, but only because his lawyer forced him into it. These allegations are nonsense, and they are pretext. In fact, the Defendant moves to withdraw his plea because he wishes for better terms, he does not want to be sentenced by the Court, and he would rather risk trial. None of these are fair and just reasons for the Defendant to withdraw his plea, nor are they reasons to vacate the

Magistrate Judge's thorough and searching plea colloquy.  Respectfully, the Motion to Withdraw should be denied.

## LEGAL STANDARD

A defendant cannot withdraw a plea unless he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  Although this rule "is to be liberally construed," there "is no absolute right to withdraw a guilty plea prior to imposition of a sentence." *United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988).  To determine if the defendant has met this burden, the court "may consider the totality of the circumstances surrounding the plea." *Id.*  The factors to be analyzed include "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved, and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* (internal citations omitted).  The first two considerations are nearly dispositive.  *See United States v. Wiggins*, 666 F. App'x 850, 855 (11th Cir. 2016) ("We have, in the past, focused on the first two *Buckles* factors and minimized the others if these first two have been satisfied."); *United States v. Wright*, No. 19-13388, 2021 WL 5969544, at *3 (11th Cir. Dec. 16, 2021) (ruling that because the defendant "had close assistance of counsel and made no showing that his guilty plea was unknowing or involuntary, we need not give considerable weight or particular attention to the factors of judicial efficiency and prejudice to the government.").  "The good faith, credibility, and weight of a defendant's assertions in support of a motion [to withdraw] are issues for the trial court to decide." *Id.*  A district court does not "abuse[] its discretion if it conducted an extensive plea colloquy that conforms with Rule 11 of the Federal Rules of Criminal Procedure prior to accepting a guilty plea." *United States v. Midkiff*, 806 F. App'x 678, 680 (11th Cir. 2020).

## BACKGROUND

The Defendant stole almost $5 million in COVID-relief funds and spent it on luxury cars and diamond and gold jewelry [ECF No. 1].   The Defendant had his initial appearance on November 8, 2022, and, after retaining private counsel, Zeljka Bozanic, [ECF No. 13], entered his bond on December 6, 2022 [ECF No. 19].   The Defendant's bond was revoked a month later because he violated the conditions of pretrial release by applying for a U.S. passport card [ECF No. 40], which, as US Probation has found and the Court has agreed, was obstructing justice [ECF No. 78, ¶ 40].

After informing the Government that he wanted to go to trial—but then seeing the mountain of evidence against him—the Defendant notified the Court he wished to change his plea [ECF No. 42].   On January 24, 2023, the Defendant pled guilty before the Magistrate Judge to Counts 7 and 9 of the indictment, which charged the Defendant with money laundering and aggravated identity theft, in violation of Title 18, United States Code, Sections 1957 and 1028A(a)(1).   [ECF No. 44].   The Magistrate Judge recommended that the Court accept the Defendant's plea, finding that the Defendant was "fully competent and capable of entering an informed plea" and that the Defendant was "aware of the nature of the charges and the consequences of the plea."   [ECF No. 43, at 3].   On February 9, 2023, the Court adopted the Magistrate Judge's recommendation [ECF No. 50].

On March 13, 2023, two weeks after receiving the Presentence Investigation Report [ECF No. 53], the Defendant filed a Motion to Withdraw his plea, alleging that he was "he was under duress" and that he "believed that he was signing paperwork related to the reinstatement of his bond."   [ECF No. 55 at 1].   The same day, Ms. Bozanic moved to withdraw as counsel, arguing that she could not be effective counsel if she had forced her client to accept a plea [ECF No. 56].

The Court held a sentencing hearing on March 30, 2023 [ECF No. 60]. At the hearing, the Court granted Ms. Bozanic's motion to withdraw as counsel, ordered the Defendant to find new counsel, and referred the motion to withdraw the plea to the Magistrate Judge [ECF Nos. 61–62]. The Defendant did not retain counsel. The Court again ordered the Defendant to find counsel [ECF No. 64]. The Defendant did not retain counsel.

On June 16, 2023, the Court held a status conference and appointed Henry Bell to represent the Defendant [ECF N. 69]. On July 24, 2023, the Defendant moved, unopposed, to withdraw his motion to withdraw his plea [ECF No. 76]. The Court scheduled sentencing for August 24, 2023 [ECF No. 77]. At the hearing, before the Court pronounced its sentence, the Defendant moved again to withdraw his plea [ECF No. 80]. The Court continued sentencing until September 7, 2023. *Id.* On September 6, 2023, the day before sentencing, Mr. Bell moved to withdraw as counsel, citing irreconcilable issues [ECF No. 83]. On September 7, 2023, at the sentencing hearing, the Court denied Mr. Bell's motion to withdraw and allowed him to file a new motion to withdraw the plea [ECF No. 84], which he did on September 18, 2023 [ECF No. 85]. In support of the Motion, the Defendant alleges that he "thought he was in court for a hearing relating to his bond revocation," and that Ms. Bozanic "pressured him to go through the guilty plea." *Id.* at 4; *see also id.* at 2 (arguing that he was "under pressure from his lawyer," who "insisted and pressured him to plead guilty").

## ARGUMENT

The Defendant had the close assistance of private counsel, with whom he entered his guilty plea knowingly and voluntarily. The Defendant's allegations about his bond or being under duress are not credible, and they should be given little weight. In fact, the Defendant has moved to withdraw his plea because he believes he can receive a lesser sentence if he proceeds to trial. This

misguided attempt to improve his term of imprisonment is not a fair and just reason to grant the Defendant's withdrawal.

I.    **KNOWING AND VOLUNARY PLEA**

The Defendant did not believe that the January 24, 2023 hearing related to his bond revocation: he knew the purpose of the hearing was to change his plea.   The document the Defendant signed was titled "Plea Agreement" in capital, bold, and underlined letters [ECF No. 45], and Ms. Bozanic affirmed that she "reviewed the plea agreement with Mr. Lorquet in detail." [ECF No. 55, at 1].   Lest there be any ambiguity, the Magistrate Judge explicitly informed the Defendant about the purpose of the hearing.

> THE COURT: I understand you're here today because you would like to change your *plea* in this case from a *plea* of not guilty to a *plea* of guilty. Under the law you cannot change that *plea* without first getting permission from the Court. I have to determine that your decision to *plead guilty* is a knowing and voluntary decision supported by an independent basis in fact, so I'm going to ask you some questions to make sure that you understand what's happening, you know what your options are, you know what rights you would be giving up if you *plead guilty*, and you know what the possible penalties and other consequences will be if you *plead guilty*. Also in federal court you can't *plead guilty* to something you didn't do, so I need to make sure that there are facts to support your *guilty plea*.
>
> Do you understand that these are the purposes of my questioning?
>
> THE DEFENDANT: Yes, ma'am.

Ex. 1, Tr. 5:11–6:2 (emphasis added). The Defendant pled guilty in his own words:

> THE COURT: How now do you plead to the charge in Count 7 of the indictment, Mr. Lorquet? Guilty or not guilty?
>
> THE DEFENDANT: Guilty, ma'am.
>
> THE COURT: How do you plead to the charge in Count 9 of the indictment? Guilty or not guilty?
>
> THE DEFENDANT: Guilty.

Tr. 29:10–29:15; *see also* Tr. 11:15–19 ("I've received a seven-page document entitled Plea Agreement that appears to bear your signature above the line 'Defendant.' Did you, in fact, sign this plea agreement?" the Magistrate Judge asked. "Yes, ma'am," the Defendant said.). The Defendant entered his plea knowingly and, just as importantly, the Defendant also entered his plea voluntarily. The Magistrate Judge asked the Defendant if he was under duress, and the Defendant said that he was not:

> THE COURT: Mr. Lorquet, has anyone made any promise or assurance to you that's not in this plea agreement to persuade you to accept the plea agreement?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Has anyone threated you in any way?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Are you pleading guilty because you are in fact guilty?
>
> THE DEFENDANT: Yes, ma'am.

Tr. 21:8–16. The Defendant's statement that he was not under duress, made under oath before the Magistrate Judge, are "strongly presume[d] [to be] true." *United States v. Ireland*, No. 22-11878, 2023 WL 2317833, at *2 (11th Cir. Mar. 2, 2023). This presumption of truth weighs heavily against the allegations in the Motion; so, too, do the Defendant's recorded calls to his friends and family after the change of plea and before he filed the first Motion to Withdraw. In these calls, the Defendant seems to have taken the advice of an ill-informed jailhouse lawyer, not his capable and private attorney, and repeatedly says that he wants to withdraw his plea because he does not like the terms he agreed to and is afraid of being sentenced.

"The plea I just signed," the Defendant told his mother, the day of the plea, "it needs to be withdrawn because it's an open plea." Ex. 2, at 01:35.[1] When his mother asked what that meant, the Defendant said that an "open plea is when the judge decides what's my sentence" and a "closed plea" means "the prosecutor and the lawyer agreed on something." *Id.* In fact, though, an "open plea" is a term that refers to entering a plea without the protections of a plea agreement. *See*, e.g., *Broderick v. United States*, No. 8:14-CR-358-T-27SPF, 2020 WL 1511854, at *4 (M.D. Fla. Mar. 30, 2020) ("A plea that is not entered pursuant to a plea agreement is known as an 'open plea.'"). The Defendant *did not* enter an open plea.

Two days later, on January 26, 2023, the Defendant called his friend and told her that he would rather go to trial than be sentenced under the plea agreement. "[I]t's on the judges, I just found that out," the Defendant said. Ex. 3, at 06:40. "He can go over it or under it. The judge what [sic] gets the actual sentence. I rather just take it to court. I rather just take it to trial if that's the case that the judge has the last call on the plea then I'll take it court. I have a better chance of winning." *Id.* Again, the Defendant did not mention duress or his bond on the call. And, despite his claimed ignorance, the Defendant had not "just" learned that about the Court's discretion during sentencing. The plea agreement states this fact on the first and second page:

> [T]he defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory . . . maximum authorized by law for the offense(s) . . . and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

[ECF No. 45, at 2, ¶ 3]. The Magistrate Judge also reiterated this fact during the change of plea.

> THE COURT: [B]y pleading guilty, you're taking the risk that Judge Moore will sentence you to the maximum penalty. As we sit here today no one knows what your sentence will be, but you do you

---

[1] The audio files of the recorded calls are conventionally filed at ECF No. 72. Transcribed portions of the relevant phone calls are available at Exhibit 8.

> understand that as long as your sentence does not exceed the maximum penalty I just described, you won't be able to take back your plea if you're not happy with the sentence that's imposed?
>
> THE DEFENDANT: Yes, ma'am.

Tr. 15:15–21. The Defendant also knew this fact because he spoke with his attorney about the sentencing guidelines. "Did you and your lawyer have a chance to talk about how the sentencing guidelines work and how they might apply to your case?" the Magistrate Judge asked. Tr. 15:22–24. "Yes, ma'am," the Defendant said. Tr. 15:25.[2] The Defendant even acknowledged to the Magistrate Judge that he understood how the Court would determine his sentence:

> THE COURT: The sentencing guidelines are only one of several factors that Judge Moore must consider in deciding your sentence. After considering all of the required factors he may impose a sentence within the advisory guideline range, above that range or below that range. He may impose a sentence that's greater than what you and your lawyer have estimated. What I want to make sure you understand is that if Judge Moore gives you a sentence that you are not happy with, you will not be allowed to take back of plea. Do you understand?
>
> THE DEFENDANT: Yes, ma'am.

Tr. 17:8–17. In his January 26, 2023 conversation with his friend, the Defendant told her the real reason that he wanted to withdraw his plea: he was concerned about the sentence the Court may impose. "So this man's life is in my hands," the Defendant said. Ex. 3, at 06:40. "Is he mean?" the Defendant's friend asked. *Id.* "Yes," the Defendant said, "He's the worst one. They call him Max Moore. He gives the maximum to every person. He wants to give people a million years before he's retired." *Id.*

---

[2] The Defendant's privately retained attorney, Ms. Bozanic, is one of only 405 board certified criminal trial attorneys in the State of Florida. The Court should not doubt her representation that she reviewed the details of the plea agreement with the Defendant, and should not doubt that she advised her client about the process of federal sentencing.

In later conversations, the Defendant reiterated his concern about his sentence and still did not mention either duress or his bond. On January 29, 2023, the Defendant told his mother that he had researched the law and wanted to withdraw his plea to get a better sentence. "I'd rather withdraw it and I could beat the two charges on there and I'd still get two years," the Defendant said. Ex. 4, at 02:40. "But she said it doesn't go that way," the Defendant's mother said, referring to Ms. Bozanic. *Id.* "It still goes by the guidelines, by the First Act," the Defendant said, "I just read the law book. I still get the First Law Act, the first time ever getting in trouble." *Id.* Three days later, on February 1, 2023, the Defendant told another friend that, after considering the guideline consequences, he may still want to withdraw his plea. *See* Ex. 5, at 01:40 ("I'm still thinking I'm gonna withdraw the plea and take it to trial.").

Ten days later, on February 11, 2023, the Defendant spoke to a friend and said he wanted to withdraw his plea because another defendant who went to trial had a good result. "I need to take it [to trial]," the Defendant said, Ex. 6, at 03:40, "Cause listen, somebody else went through the same thing and they gave him less than a year, and he took it trial . . . . If I beat the charges that I need to beat, it's only two years that you have to do." *Id.*

The next day, on February 12, 2023, the Defendant spoke to his mother and told her that he had further researched the law, Ex. 7, at 05:19 ("You have to look at the book. Look up a book called *Busted By the Feds*"), calculated his guideline sentence under what he believed to be the law, *id.* ("Trump put a thing called the First Time Act. If it's ever your first time getting in trouble you do the less time. He has to go by the guidelines"), and compared his case to another person's, *id.* ("One year. His name is Blue Smith. He's a rapper. It was all over the radio news when he got out of jail two days ago. He just got out, mom."). But "you already pled guilty," the Defendant's mother said to him. *Id.* "I've been playing with—," the Defendant said, and the call cut out. *Id.*

The Defendant's in-court statements affirm that he understood he was entering a guilty plea and that he did so freely. In between entering the guilty plea and moving to withdraw it, the Defendant researched the law, poorly, and came to believe that he would rather assume the trial risk than be sentenced under the plea agreement. The Defendant's out-of-court statements to his friends and family show that the allegations in the Motion—that the Defendant was under duress or that he believed he was attending a bond hearing—are false. They should not be believed, and they should not outweigh the Magistrate Judge's findings that the Defendant entered his plea knowingly and voluntarily.

## II.   OTHER *BUCKLES* CONSIDERATIONS

The other three *Buckles* factors also weigh against granting the Motion. The Defendant had the assistance of privately retained counsel, the Defendant continues to waste judicial resources, and proceeding with trial will prejudice the Government.

First, the Defendant repeatedly affirmed before the Magistrate Judge that he was satisfied with his counsel.

> THE COURT: Have you fully discussed th[e] charges and the case in general with your attorney?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Have you had enough time to think about this and talk about the case with your attorney?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you and your lawyer review the discovery materials, that is the evidence the Government says it would use to prove the case against you at trial?
>
> THE DEFENDANT: Yes, ma'am.
>
> …
>
> THE COURT: Is there anything you've asked your lawyer to do but she's failed to do it for you?

-10-

> THE DEFENDANT: No, ma'am.
>
> THE COURT: Is there anything that you asked her about the case but that she hasn't been able to answer that for you?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Are you fully satisfied then with your lawyer and the advice and representation she's given you?
>
> THE DEFENDANT: .Yes, ma'am.

Tr. 10:7–10:20; 11:6–11:14.   Defense Counsel also reviewed the plea agreement with the Defendant and answered any questions.

> THE COURT: Before you signed the plea agreement, did you have a chance to review each and every paragraph of the plea agreement with your lawyer?
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .
>
> THE COURT: [I]f you had questions about what the plea agreement means, were you able to ask your lawyer those questions and did she answer you?
>
> THE DEFENDANT: Yes, ma'am.

Tr. 11:20–23; 12:4–7. The Defendant's allegation that his attorney forced him into it—even if it were believable—is not a reason to withdraw his plea. "A defendant cannot complain of coercion where his attorney, employing [her] best professional judgment, recommends that the defendant plead guilty." *See, e.g.*, *Buckles*, 843 F.2d at 472.

Second, judicial resources should not be expended proceeding to trial where, as here, the defendant is not only "attempting to withdraw his guilty plea without any factual or legal basis to do so," but also moving to withdraw his plea "after signing a plea agreement with the Government," after "signing a Stipulated Factual Basis admitting he committed the acts charged," and after "freely and voluntarily pleading guilty in open Court after a thorough Rule 11 inquiry

-11-

conducted by [the] Magistrate Judge." *United States v. Byrne*, 09-cr-14059-MOORE (S.D. Fla. June 4, 2010); *see also United States v. Garcia*, 05-CR-20393-MOORE, at 5 (S.D. Fla. Oct. 19, 2005) (finding that judicial resources should not be expended, as in this case, "in the conduct of a trial on issues to which [the Defendant] has already freely admitted"). Indeed, in this case as in others before this Court, allowing the Defendant "to withdraw his guilty plea in the hope that he will receive a more lenient sentence only postpones the date on which those judicial resources would be expended, as well." *Garcia*, 05-CR-20393-MOORE, at 6 (S.D. Fla. Oct. 19, 2005).

Third, the Government will be prejudiced by proceeding to trial. The Defendant previously notified the Government he intended to proceed to trial, and the Government prepared. The Government filed its notices of intent to introduce evidence [ECF Nos. 23, 26, 28, 29, and 34], interviewed witness, served trial subpoenas, and produced its exhibits to the Defendant. After reviewing the Government's evidence and appreciating the strength of the Government's case, the Defendant chose to plead guilty. The Government therefore notified its witnesses that they were no longer needed, and the United States Probation Office prepared a Presentence Investigation Report [ECF No. 53]. The Defendant now seeks to withdraw his plea agreement and return the Government to January 2023. Indeed, the undersigned AUSA no longer works in Miami, Florida, and his trial partner has been called to military duty. Furthermore, the Government has limited resources to investigate and prosecute the vast amount of uncharged COVID-relief fraud in this District, and many of the witnesses such as the loan processors have multiple trials to attend to. The Government, and the Court, deserve to move on.

## CONCLUSION

The Defendant's allegations in the Motion—that he was under duress and believed he was attending a bond hearing—are not credible, and the Motion does not set forth a fair and just reason

for the Court to grant the withdrawal.   Respectfully, the Defendant Andre Lorquet's Second

Motion to Withdraw Guilty Plea [ECF No. 85] should be denied.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY:      /s/Jonathan Bailyn
         Jonathan R. Bailyn, AUSA
         Court ID No. A5502602
         500 South Australian Ave, 4th Floor
         West Palm Beach, Florida 33401
         Phone: (561) 209-1050
         jonathan.bailyn@usdoj.gov